ERVIN, J.,
dissenting.
If the Special Disability Trust Fund statute requires nothing less in all cases than an employer’s actual knowledge as a precondition to Fund reimbursement, I could readily agree with the majority’s decision to reverse. Admittedly, there is nothing in the record disclosing Northwest Airlines’ actual knowledge of its employee’s permanent preexisting condition before the occurrence of his second injury in 1991. Nevertheless, the record amply supports imputed knowledge of the preexisting condition.
In the typical case of Fund involvement, the worker initially brings a prior permanent impairment to the workplace with him or her. If the employer knows nothing of the preexisting permanent condition before hiring the employee, its lack of knowledge negates the essential purpose behind the statutory right to reimbursement, which is
to encourage the employment of the physically handicapped by protecting employers from excess liability for compensation for a permanent disability *482 when an injury to an employee merges with his pre-existing permanent physical impairment to cause a greater disability than would have resulted from the last injury standing alone.
Unit Wall Co. v. Speh, 133 So.2d 304, 307-308 (Fla.1961). See also § 440.49(2)(a), Fla. Stat. (Supp.1990).
The facts in the instant case, however, are far from typical. There is nothing in the record showing that the employee was suffering from a permanent condition at the time of his initial employment with Republic Airlines. He sustained two com-pensable injuries, one in 1983, and the second in 1991, while working essentially for the same employer. Following the first accident, Republic and Northwest merged in 1986, resulting in the newly organized corporation assuming the rights and responsibilities of the former corporation. 19 Am.Jur.2d Corporations § 2510 (1986). At issue is whether Northwest was aware as of the time of the second injury of its employee’s prior permanent affliction, caused by the 1983 accident. Both the Fund and Northwest stipulated that “claimant had a pre-existing permanent impairment to his back as a result of the lumbar laminectomy and discectomy in 1984.” Although nothing in the parties’ agreement reflects the employer’s actual knowledge of the impairment before the occurrence of the second injury, its knowledge could, in my judgment, be appropriately imputed to it, based on all the circumstances, as the judge of compensation claims (JCC) apparently concluded in his order.
In addition to the parties’ stipulation, the operative facts, as recited in the judge’s order, are as follows:
2. Prior to 2/23/91, the Claimant suffered a back injury which required surgery. Karen Jacobs, of Northwest Airlines, testified that while working as a claims coordinator for Republic in 1983 she handled a workers’ compensation claim involving the claimant. The claimant, a station agent for Republic, was
responsible for loading and unloading baggage at different locations throughout their system. In 1983, the claimant was injured in a compensable workers’ compensation accident involving his low back. Ms. Jacobs testified that as a result of this injury, the claimant underwent surgery on 1/13/84. The operative report for this surgery was contained in the claimant’s personnel file maintained by Northwest Airlines.
[[Image here]]
14. Finally, the testimony by Karen Jacobs also establishes that there was no question but that the Employer had adequate knowledge of the pre-existing condition. Ms. Jacobs, an employee of Northwest Airlines, provided a surgical report from 1984 which was in the Claimant’s personnel file documenting that the Employer was aware of the claimant’s prior laminectomy. Though this laminectomy does not fit into one of the listed ‘presumed conditions’ of § 440.49(2)(f)(l), the Employer/Carrier did meet their duty to establish adequate knowledge.
Ms. Jacobs testified that she was aware of the back injury and surgery prior to the 2/23/91 accident. Ms. Jacobs further testified that she was aware that [the employee], as a baggage handler who was required to load and unload baggage at different points through the system, a back injury such as this could inhibit one’s ability to bend, stoop and lift, and thus perform his job duties. As such, Ms. Jacobs testimony established that the Employer had knowledge of the pre-existing condition and considered it to be or potentially be a hindrance or obstacle to his employment.
Ms. Jacobs, who was employed by Republic when the injured worker sustained his first injury and by Northwest at the time of his second accident, clearly testified that she knew and personally handled his first compensation claim in 1983. Al *483 though the file involving the claim was destroyed according to company policy after seven years and no longer existed as of the date of the reimbursement hearing, June 23, 1998, the surgery report from the first accident remained in the company files. Therefore, the JCC could reasonably infer that the file relating to the earlier claim had remained in the employer’s custody until shortly before the second injury.
Considering the testimony of Ms. Jacobs, the employer’s claims coordinator, that claimant’s first injury required a lami-nectomy, and the parties’ stipulation agreeing that the laminectomy resulted in a permanent impairment, I see no reason why knowledge of the employee’s permanent condition could not be appropriately imputed to Northwest. This court has applied the doctrine of imputed knowledge in a different factual context, thereby allowing an employer reimbursement from the Fund. Special Disability Trust Fund v. Wheeler, 440 So.2d 460 (Fla. 1st DCA 1983) (union’s knowledge of worker’s permanent impairment was properly imputed to employer, which had delegated to union the duty to hire).
I recognize that this court in Special Disability Trust Fund v. Siesta Lago Mobile Homes, 473 So.2d 8 (Fla. 1st DCA 1985)—a case cited by the majority — refused to allow knowledge to be imputed to the employer seeking reimbursement in the absence of its actual knowledge of the worker’s preexisting impairment, but the facts there are far different from those at bar. It appears from the court’s opinion that the worker had a preexisting permanent condition when he was first employed by the owner of a mobile home park; that title to the park was transferred; and that the worker continued his employment with the new owner and thereafter suffered his compensable injury. Because nothing in the record showed the second owner had any knowledge of the prior impairment, or that the two owners were connected, as here, the court correctly declined to impute the knowledge possessed by the prior owner to the current operator of the park. Id. at 8-9.
Obviously the facts in Siesta Lago Mobile Homes, involving two different employers and a worker’s permanent impairment which existed before his initial employment, are far different from those at bar in which the claimant suffered two compensable injuries while working for the same employer. Given these somewhat unusual circumstances, I would affirm.